Larry **BARTLETT** and Sara Bartlett, Appellants,

v.

Martin **CHEBUHAR**, Appellee.

No. 90–1311.

Supreme Court of Iowa.

Jan. 22, 1992.

D.G. Ribble, Robert R. Rush, and Wilford H. Stone of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellants.

Eric M. Knoernschild of Hintermeister & Knoernschild, Muscatine, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

PER CURIAM.

The Bartletts have appealed from a district court ruling dismissing their claims against Martin Chebuhar. The Bartletts

claim that Chebuhar was negligent when he hit a golf ball that struck Larry Bartlett in the eye. We reverse and remand.

On May 15, 1987, both Larry Bartlett and Martin Chebuhar were playing golf at the Washington Golf and Country Club. Larry was playing hole number three at about the same time Martin was playing hole number nine. Martin's tee shot on hole nine fell somewhat towards the right of the fairway. Martin's second shot went sharply to the right and landed in front of the number four tee. When Martin prepared to take his third shot, he saw that there were people at an angle to his right on the number three green; he saw no individuals on his intended path to the number nine green. After hitting his third shot, Martin realized his golf ball was traveling towards the number three green and he testified that he yelled "fore" after striking the ball. Martin's ball hit an embankment in front of the third green and ricocheted up and hit Larry in the eye.

Larry, and his wife Sara, filed a petition seeking damages based on Martin's negligence in hitting the ball and failing to warn when Larry was reasonably within the range of danger of being struck by the ball. Martin answered, denying that he was negligent and alleging several affirmative defenses. The case proceeded to trial before the court.

Following trial, the district court entered its findings of fact and ruling. The court found that, "In the case before the court, plaintiff was not in defendant's line of sight or intended flight of the ball. There is no showing that defendant's actions constituted negligence." Finding no legal duty and thus no negligence, the district court dismissed the Bartletts' petition at their cost. The Bartletts have filed this appeal.

■ Our case law on negligence is succinctly summarized in a uniform civil jury instruction as "... failure to use ordinary care. Ordinary care is the care which a reasonably careful person would use under similar circumstances. 'Negligence' is doing something a reasonably careful person would not do under similar circumstances,

or failing to do something a reasonably careful person would do under similar circumstances." 1 Iowa Civil Jury Instructions 700.2 (1987); see Christianson v. Kramer, 255 Iowa 239, 245, 122 N.W.2d 283, 287 (1963). In a situation where a person is struck by a golf ball, the general rule is that, "... a golfer is only required to exercise ordinary care for the safety of persons reasonably within the range of danger of being struck by the ball." Annotation, Liability to One Struck by Golf Ball, 53 A.L.R.4th 282, 289 (1987). "Although a golfer about to hit a ball must, in the exercise of ordinary care, give an adequate and timely warning to those who are unaware of his intention to play and who may be endangered by the play, this duty does not extend to those persons who are not in the line of play, if danger to them is not reasonably to be anticipated." Id. In applying this general standard, courts have noted that a bad shot that causes injury to another does not of itself establish negligence. Jenks v. McGranaghan, 30 N.Y.2d 475, 334 N.Y.S.2d 641, 285 N.E.2d 876 (1972). Still, a bad shot may constitute negligence in a situation where the defendant has a propensity to shank his golf shots. Cook v. Johnston, 141 Ariz. 589, 688 P.2d 215 (App.1984).

■ In this case, the district court concluded that since Larry was not in the intended path of Martin's shot, Martin owed no duty to Larry as a matter of law to either warn him prior to the shot or not take the shot. In effect, the district court is equating the intended path of a shot with the reasonable zone of danger. We disagree with the district court's restrictive definition of what was reasonably within Martin's zone of danger when he took his third shot. In fact, some cases have suggested that the zone of danger might include someone standing at a point 50 degrees from the intended line of flight where it was foreseeable that the ball would go in that direction. Boozer v. Arizona Country Club, 102 Ariz. 544, 547, 434 P.2d 630, 633 (1967). In any event, courts agree that a golfer's duty extends beyond the intended path of the ball and encom-

passes a wider zone of danger based on the facts and circumstances in each individual case. *Cook*, 141 Ariz. at 591, 688 P.2d at 217.

In *Cook*, the court determined that the zone of danger was wider given the golfer's propensity to shank. In this case, however, we fail to find a similar analysis by the district court in establishing what was reasonably within Martin's zone of danger when he took the tragic shot. Since we find that the district court failed to adequately apply the proper legal standards to the facts in this case, we reverse and remand for reconsideration by the district court based on the present record consistent with this opinion.

REVERSED AND REMANDED.