2006 OK CIV APP 106

Lonnie THOMAS, Plaintiff/Appellant,

v.

Diane C. WHEAT, Defendant/Appellee.

No. 102,963.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Aug. 8, 2006.

James M. Reid Edmond, OK, for Plaintiff/Appellant.

Tim D. Cain, Ryan R. Chaffin, Wilson, Cain & Acquaviva, Oklahoma City, OK, for Defendant/Appellee.

Opinion by DOUG GABBARD II, Presiding Judge.

¶1 This is an appeal by Plaintiff, Lonnie Thomas, from the trial court's grant of summary judgment in favor of Defendant, Diane C. Wheat, who hit a golf ball that struck Plaintiff. Based on the appellate record and the law, we reverse and remand.

## BACKGROUND

¶2 Plaintiff had been hired to paint a house that bordered The Greens Country Club golf course to the west. He had been cleaning his paint brushes behind the house, and walked back to a large tree to check on whether there were any golfers nearby. This put him about 125 yards northwest of the sixth tee.

¶3 Defendant was part of a threesome of golfers playing the course. As she approached the sixth tee, Defendant noticed Plaintiff down by the tree. She teed off. Instead of going straight down the fairway as Defendant had intended, the ball hooked and headed in the direction of the backyard. Defendant and her fellow golfers yelled, "Fore!" [1] Plaintiff later stated he never heard the warning.

¶4 The ball hit Plaintiff in the mouth, injuring him. Plaintiff filed a petition, asserting Defendant negligently struck him and negligently failed to warn him.

¶5 Deposition testimony established that no fence separated the house from the golf course, but Plaintiff believed he was inside the house's property line when he was hit. Plaintiff stated he knew he needed to keep a lookout for golf balls flying into the yard, but that he was hit before he had a chance to see if there were golfers on the tee. Other testimony revealed that one of the other members in Defendant's threesome teed off before Defendant and hit a ball in the direction of Plaintiff. He yelled, "Fore," but Plaintiff did not respond.

1. According to the United States Golf Association, "fore" is the traditional word of warning when a player strikes a ball in a direction where there is a danger of hitting someone. *http://www. usga.org/playing/etiquette/etiquette.html.* "Fore" is another word for "ahead," as in a ship's fore as opposed to its aft, and may have evolved from the word "forecaddie," a person accompanying a group around a golf course who often went forward to be in a position to pinpoint the location of the group's shots. *http://golf.about.com/cs/historyofgolf/a/hist—fore.htm.*

¶ 6 Defendant filed a motion for summary judgment. She asserted (1) there was no evidence of negligence; (2) she had no duty to warn; and (3) Plaintiff assumed the risk because he had been at the home before and knew there was a danger of being hit by an errant shot.

¶ 7 The trial court sustained Defendant's motion for summary judgment. Plaintiff appeals.[2]

## STANDARD OF REVIEW

 ¶ 8 Summary judgment is used to reach a final judgment where there is no dispute as to any material fact, *Indiana Nat'l Bank v. Dep't of Human Servs.*, 1993 OK 101, ¶ 10, 857 P.2d 53, 59, and where one party is entitled to judgment as a matter of law, *Sellers v. Okla. Pub. Co.*, 1984 OK 11, ¶ 23, 687 P.2d 116, 120. We review a grant of summary judgment *de novo. Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. "In a *de novo* review we have plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law." *Id.*

## ANALYSIS

¶ 9 In his appellate brief, Plaintiff asserts that there was evidence supporting his allegation that "Defendant Diane C. Wheat negligently drove a golf ball in the direction of the Plaintiff." Plaintiff relies on Defendant's deposition testimony that she hits a ball out of bounds once every two rounds, and compensates for a natural tendency to hit the ball to the right by changing her grip, often producing a shot that goes left. Plaintiff also asserts that Defendant should have given the warning *before* hitting the shot, instead of *after.* Finally, Plaintiff asserts that he did not assume the risk of injury.

 ¶ 10 While the golf ball certainly did not go where Defendant intended, and Defendant may have negligently played the

shot, a negligent act is not necessarily *actionable* negligence. *Dirickson v. Mings*, 1996 OK 2, ¶ 8, 910 P.2d 1015, 1018.

 ¶ 11 Liability for negligence typically occurs when there is a breach of a duty to another. Whether a duty exists presents a question of law which depends on the relationship between the parties and the general risks involved in the common undertaking. *Wofford v. Eastern State Hosp.*, 1990 OK 77, 795 P.2d 516. In *Wofford*, the Oklahoma Supreme Court stated that whether a defendant stands in such a relationship to a plaintiff that the law will impose an obligation of reasonable conduct for the benefit of a plaintiff is a matter of law. *Id.* at ¶ 10, 795 P.2d at 519. The Court quoted *Union Bank of Tucson v. Griffin*, 1989 OK 47, ¶ 12, 771 P.2d 219, 222, wherein it stated:

> "Duty of care is not a concept that arises only by statute.... Whenever a person is placed in such a position with regard to another that it is obvious that if he did not use due care in his own conduct he will cause injury to the other, the duty at once arises to exercise care commensurate with the situation in order to avoid such injury."

 ¶ 12 Perhaps the most important consideration in determining whether a duty exists is foreseeability. The general rule is that "a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." *Wofford*, 1990 OK 77 at ¶ 11, 795 P.2d at 519 (internal quotation marks omitted). In *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, 913 P.2d 1318, the Oklahoma Supreme Court held that a car repairer owed a duty of care to members of the general public because they were within the zone of persons who could foreseeably be injured by the negligent failure to repair a car. Our Court cited the Florida case of *McCain v. Florida Power Corp.*, 593 So.2d 500 (Fla.1992), for the prop-

---

2. Defendant filed a motion to dismiss this appeal for Plaintiff's failure to file the record on appeal at the same time as his petition in error. *See* Sup.Ct. R. 1.36(b), 12 O.S.2001 ch. 15, app. The Supreme Court ordered Plaintiff to file the record by February 6, 2006. Plaintiff filed a motion to comply, admitting he had inadvertently failed to file the record, and requesting 15 days to do so. Then, on February 3, 2006, he filed the record. The Supreme Court later deferred the matter to this Court. Because Plaintiff met the Court's deadline, we deny Defendant's motion and regard Plaintiff's motion as moot. This appeal shall proceed.

osition that foreseeability, as an element of *duty of care*, creates a "zone of risk" and is a minimum threshold legal requirement for opening the courthouse doors. *Delbrel,* 1996 OK 36 at ¶ 8, 913 P.2d at 1321. "Foreseeability as an element of *proximate cause* is a much more specific factual requirement that must be proved to win the case once the courthouse doors are open." *Id.* at ¶ 12, 913 P.2d at 1322.

¶ 13 The game of golf is not an inherently dangerous game. While it is foreseeable that a golf ball may be errantly hit, even by the most competent golfer, it is not always foreseeable that it will go in a certain place, or travel outside the bounds of the course, or endanger a particular person or class of persons. Negligently driving a golf ball does not lead to liability in the same way that negligently driving an automobile does. A golfer is only required to exercise ordinary care for the safety of persons reasonably within the zone of risk or danger, and the golfer has no duty to those persons who are not in the line of play, *if danger to them cannot be reasonably anticipated.* Thus, it has been stated that a bad golf shot causing injury to another does not *per se* establish negligence, but may constitute negligence where, for example, the defendant has a *propensity* to shank golf shots. 27A Am.Jur.2d *Entertainment and Sports Law* § 89 (1996).

¶ 14 These principles have generally been followed by other state courts. *See* Holliday, David M, Annotation, *"Liability To One Struck By Golf Ball,"* 53 A.L.R.4th 282 (1987). For example, in *Rinaldo v. McGovern,* 78 N.Y.2d 729, 579 N.Y.S.2d 626, 587 N.E.2d 264 (1991), the New York court recognized that merely because a golf ball does not travel in the intended direction does not establish a viable negligence claim. There, the errant shot broke the windshield of a car traveling on a road adjacent to the golf course. The New York court applied traditional tort liability requirements that there must exist a recognizable risk and a basis for concluding that the harm following from the consummation of the risk was reasonably preventable. The court concluded that the game of golf is such that the risk of a mis-hit golf ball is not a fully preventable occur-

rence. In other words, the court said the risk was foreseeable, but not preventable. *Id.* at 267. However, in *Hennessey v. Pyne,* 694 A.2d 691 (R.I.1997), the Rhode Island court distinguished *Rinaldo* where an errant shot by a golfer (the assistant pro) hit a resident of a condominium adjacent to the golf course. The Rhode Island court held that a duty existed because of the golfer's *specific knowledge* that his best chance of doing well on the hole depended upon hitting the ball as close to the adjacent condo as possible, that the condo was within "striking distance," that the condo was often hit, and that the particular plaintiff was a continuing presence within the condo. *Id.* at 698. These decisions illustrate that a golfer's duty depends on the particular facts of each case and may sometimes extend beyond the intended flight of the ball to encompass a wider zone of risk. *See also Bartlett v. Chebuhar,* 479 N.W.2d 321 (Ia.1992).

¶ 15 There is a minority view, including the Missouri court in *Cavin v. Kasser,* 820 S.W.2d 647, 650–51 (Mo.Ct.App.1991), which limits a golfer's duty—in that case, to warn—only to those persons in the intended line of flight. However, we find the majority rule more consistent with Oklahoma's "zone of risk" concept. We find that the zone of risk rule imposes upon golfers a duty to warn persons who are within the flight path specifically intended by the golfer, or who are within the area in which a golfer has a propensity to shank shots.

¶ 16 As indicated above, the mere fact that Defendant was aware of Plaintiff's presence near the boundary of the golf course before she hit her shot is not enough to establish a duty of care. However, the fact that she had a propensity to hit shots that went left and occasionally outside the course boundary might lead a reasonable person to conclude that Plaintiff, who was to the left and just outside the course boundary, was within the zone of risk. Likewise, the fact that a fellow golfer had teed off immediately before Defendant and had also hit a ball in Plaintiff's direction did not make it more likely that Defendant would do so. However, the fact that the other golfer's "fore" warning had been ineffective might

lead a reasonable person to conclude that a louder warning, different warning, or warning *before* the golf shot was necessary.[3] Thus, factual questions exist which preclude the granting of summary judgment.

¶ 17 We also find that a substantial controversy exists regarding the defense of assumption of the risk. Generally, to establish the defense of assumption of risk, a defendant must show:

1. [The plaintiff] knew of the risk and appreciated the degree of danger;

2. [The plaintiff] had the opportunity to avoid the risk;

3. [The plaintiff] acted voluntarily; and

4. [The plaintiff's] action was the direct cause of [his/her] injury.

*See Oklahoma Uniform Jury Instructions–Civil, Inst. No. 9.14* (OCIS 2006).

¶ 18 When someone is injured by an errant golf ball inside the bounds of a golf course, it may be generally presumed as a matter of law that they, in venturing onto the course during play, have assumed the risk of injury. However, when someone is injured by an errant golf ball while outside the bounds of a golf course, application of the defense depends upon the specific facts of each case. In this case, although Plaintiff admitted knowing that he was working at a house adjacent to the golf course and that golf balls were often hit into the backyard, his affidavit stated that he did not appreciate the damage a golf ball could cause and that he was behind trees which he thought would protect him from errant shots.

## CONCLUSION

¶ 19 Liability for negligence resulting from injury to a person from an errant golf ball depends upon whether the plaintiff was within the "zone of risk" and whether the defendant adequately warned the plaintiff of the danger. Zone of risk may be shown by proof that the defendant knew of the plaintiff's presence, and either intentionally hit the ball in the plaintiff's direction or had a propensity to do so. There is a presumption that a plaintiff assumed the risk of injury from an errant golf ball if he or she is within the bounds of a golf course, but no such presumption applies if the plaintiff is outside the boundary. In such a case, the defendant has the burden of proving this affirmative defense. Here, a substantial controversy exists regarding Defendant's alleged negligence and Plaintiff's alleged assumption of the risk. For all of these reasons, the trial court's grant of summary judgment is reversed. The cause is remanded for further proceedings.

¶ 20 REVERSED AND REMANDED.

RAPP, V.C.J., and REIF, J., concur.

---

**3.** In this regard, we note that mere compliance with rules of golf, such as yelling "fore" *after* a shot is hit, does not *per se* establish reasonableness, and deviation from customary practice, as suggested by Plaintiff's affidavits from veteran golfers, does not *per se* demonstrate unreasonableness. The test is what a reasonable person would have done under the circumstances then existing.